**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

RICHARD ALAN BEHNAN,

       *Petitioner*               CRIM. CASE NO: 1:10-cr-20563
                                     CIV. CASE NO.: 1:15-cv-11632

*v.*                                  DISTRICT JUDGE THOMAS L. LUDINGTON
                                     MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

       *Respondent.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON PETITIONER'S 28 U.S.C. § 2255 MOTION**
**TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
(Doc. 91)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to

vacate (Doc. 28) be **DENIED.**

**II.   REPORT**

    **A.    Introduction**

On May 11, 2011, a First Superseding Indictment charged Petitioner, Dr. Richard Alan

Behnan, D.P.M. ("Petitioner" or "Behnan") with one count of Conspiracy to Commit Health Care

Fraud, in violation of 18 U.S.C. §§ 1347 and 1349 (Count 1) and twelve counts of Health Care

Fraud in violation of 18 U.S.C. §§ 1347 and 2 (Counts 13, 25, 28, 38, 41, 42, 43, 44, 43, 46, 47,

and 48). (Doc. 18.) Petitioner was released on bond pending trial. (Docs. 3, 4.) Final pretrial

conferences were held on April 26, 2011 (Doc. 96) and on November 10, 2011. (Doc. 81.) During

the April conference, Petitioner's lawyer, Craig Wormley, told Petitioner, "I just want to confirm,

you're aware back in 2007 that I personally had some issues with the State Bar of California that

have been resolved and I an fully active not only in this Court but in California?" and Petitioner

responded, "Yes, sir." (Doc. 96 at ID 1042.) At the second final pretrial conference in November,

Petitioner was in propria persona, so the court rescheduled the conference (Doc. 81 at ID 878), but

no further conference was held. Instead, Petitioner entered a guilty plea to conspiracy to commit

health care fraud (Count 1) on November 21, 2011, pursuant to a Rule 11 plea agreement. (Docs.

41, 42.) Petitioner was represented by Craig Wormley at the time he entered his plea. (Doc. 42.)

Petitioner's sentencing was adjourned, reset, and then an Order to Show Cause was entered

by the Court on June 29, 2012. (Docs. 49, 50, 51, 52.) A show cause hearing was held on July 11,

2012, during which Petitioner was again in propria persona. (Doc. 82.) The court indicated that it

had received several phone calls from attorney Craig Wormley, wherein Mr. Wormley indicated

that he was attempting to seek readmission to practice in the Eastern District but had been denied

readmittance. (Doc. 82 at ID 884-85). The Court also stated that it had received notice that Mr.

Wormley had been suspended from practice on February 14. (Doc. 86 at ID 885.) Petitioner

indicated that he "would like him to still represent me. He has been with me the last couple years

and he knows my case. . . . I'm sure everyone is frustrated with how long this has taken but I would

still like him to represent me if that is possible." (Doc. 82 at ID 888.) The Court told Petitioner that

he needed to make the decision whether to continue with Mr. Wormley by the end of the week.

(*Id.*) The Court also advised Petitioner that he could hire other counsel or ask for court-appointed

counsel. The Court then directed him to the magistrate's chambers to complete the paperwork

needed to request court-appointed counsel. (Doc. 82 at ID 889-90.) The Court clarified that Mr.

Wormley would have to be reinstated before he could represent Petitioner. (Doc. 82 at ID 890.)

On August 8, 2012, the court appointed new counsel, Judith Gracey, to represent Petitioner. (Doc. 55.) At the initial sentencing hearing, testimony was taken regarding the economic loss involved in the case, but Petitioner indicated that the information contained in the plea agreement was inaccurate and he stated that he only signed the agreement because Mr. Wormley had failed to adequately represent him. (Doc. 61.) Therefore, the Court set a continued sentencing hearing and briefing schedule regarding the amount of economic loss should Petitioner decide to withdraw his plea. (Doc. 58 at ID 456.) Petitioner decided not to withdraw his plea and filed a supplemental brief regarding the amount of loss. (Doc. 60.) The government also filed its brief on the subject. (Doc. 62.) The plea agreement contained a waiver of Petitioner's right to collaterally attack his conviction or sentence in any post-conviction proceeding, including, but not limited to, any proceeding under 28 U.S.C. §2255. (Doc. 41 at ID 374.)

Petitioner was sentenced on November 26, 2012 (Doc. 64,) and Judgment entered on January 17, 2013, committing Petitioner to the Bureau of Prisons for a term of 55 months. (Doc. 70.)

Petitioner's §2255 motion to vacate his sentence asserts that his trial counsel was ineffective because he rejected the first plea offer "on advice of counsel" and "received 10-50 times the prison time offered in the 1st Plea Agreement offer" and he was "required to pay $1,623,819.00 above the 1st plea agreement." (Doc. 91 at ID 1009.) Petitioner also appears to rely on the fact that his "legal counsel, during the pre-trial period, was suspended from the case by the District Court. Counsel had been suspended from the practice of law . . . [and that] [c]ounsel is currently serving time at the Ingham County Jail, Lansing, MI." (*Id.*)

### B.   Law and Analysis

#### 1.   General Law

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

#### 2.   Waiver

Respondent does not argue that the collateral attack waiver in the instant plea agreement should be enforced but the Court notes that such a waiver was executed and Petitioner does not challenge the voluntariness of the waiver.

"It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)); *accord United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). Thus, the Sixth Circuit has "held that a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United*

4

*States*, 258 F.3d 448, 450 (6th Cir. 2001) (noting that "plea agreement waivers of § 2255 rights are generally enforceable"). However,

> [I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel under *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or collateral attack when the substance of his claim challenges the very validity of the waiver itself.

*Acosta*, 480 F.3d at 422. Nevertheless, "Enforcing appeal waivers makes good sense as well. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits, too, by saving the time and money involved in arguing appeals." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) (citations omitted). Therefore, as long as the plea was knowing and voluntary, and not the product of ineffective assistance of counsel, the appellate and collateral attack waiver will be enforced. *Id.*

Although Petitioner raises an issue regarding his counsel's advice and his choice to reject the first plea offer, he does not argue that his plea (to the second offer) was not knowing or voluntary. I suggest that Petitioner has not alleged that his actual plea was the product of ineffective assistance of counsel; therefore, I further suggest that the collateral attack waiver should be enforced and the case dismissed.

> 3.     *Merits*

Petitioner argues that he was ill advised by his counsel when he rejected the first plea offer. (Doc. 91 at ID 1009.) Respondent contends that the first "offer was made by letter dated April 6, 2011, at which time the evidence against Behnan was not overwhelming" and that at that time, defense counsel could "reasonably argue that the whole case was merely a misunderstanding about what constituted a 'nail avulsion' and, if necessary, blame the mistaken billings on [co-defendant]

Morel." (Doc. 97 at 1047-48.) Respondent further notes that at that time, co-defendant Morel was

cooperating with the defense and was not a government witness. (Doc. 97 at ID 1048.) Respondent

further explains that "[a]fter that [first] offer was rejected the parties agreed to separate the cases

against Behnan and Morel, with Morel going to trial first" and that "[d]uring that trial Morel

elected to plead guilty; to cooperate with the government; and to agree to testify against Behnan.

That series of events made the government's case against Behnan so strong as to be indefensible -

in a word, overwhelming." (Doc. 97 at ID 1049-50.) Respondent notes that the second offer

negotiated by defense counsel "allowed Behnan to admit only to the very limited amount of fraud

specified in certain counts of the indictment, with a total dollar value of only $899.41" and the

agreement thereby "allowed Behnan to argue that the guideline range should only be 0-6 months."

(Doc. 97 at ID 1050.) Finally, Respondent notes that during the plea taking, Petitioner indicated

that he was satisfied with his counsel's advice and assistance. (*Id.*; Doc. 41 at 8-9.)

Claims of ineffective assistance of counsel are governed by the Supreme Court's rule

pronounced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court enunciated

a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim.

First, the movant must show that counsel's performance was deficient in that it fell below an

objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop

trial strategy in the true sense–not what bears a false label of 'strategy'–based on what

investigation reveals witnesses will actually testify to, not based on what counsel guesses they

might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir.

2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent

that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show

that the alleged error "had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

Rather, the movant must show that, but for counsel's errors, the result would have been favorably

different. *Id*. at 694. Failure to make the required showing under either prong of the *Strickland* test

defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is

that counsel's unprofessional errors so upset the adversarial balance between defense and

prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v.*

*Morrison*, 477 U.S. 365, 374 (1986). This language highlights the Supreme Court's consistent view

that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364,(1993), the Court clarified the meaning of "prejudice"

under the *Strickland* standard:

> Under our decisions, a criminal defendant alleging prejudice must show "that
> counsel's errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome
> determination, without attention to whether the result of the proceeding was
> fundamentally unfair or unreliable, is defective.

*Id.* at 369 (citations omitted).

In the context of plea offers, "defense counsel has the duty to communicate formal offers

from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.

. . . When defense counsel allowed the offer to expire without advising the defendant or allowing

him to consider it, defense counsel did not render the effective assistance the Constitution

requires." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).

In order to satisfy the prejudice requirement under *Strickland*, petitioners must "demonstrate

a reasonable probability they would have accepted the earlier plea offer had they been afforded

effective assistance of counsel." *Id.* at 1409; *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir.

2003). Petitioners

> must also demonstrate a reasonable probability the plea would have been entered
> without the prosecution canceling it or the trial court refusing to accept it, if they had
> the authority to exercise that discretion under state law. To establish prejudice in this
> instance, it is necessary to show a reasonable probability that the end result of the
> criminal process would have been more favorable by reason of a plea to a lesser
> charge or a sentence of less prison time.

*Fyre*, 132 S. Ct. at 1409.

> Although some circuits have held that a defendant must support his own assertion
> that he would have accepted the offer with additional objective evidence, . . . we in
> this circuit have declined to adopt such a requirement. . . . Nevertheless, it has been
> held, as the district court recognized, that a substantial disparity between the penalty
> offered by the prosecution and the punishment called for by the indictment is
> sufficient to establish a reasonable probability that a properly informed and advised
> defendant would have accepted the prosecution's offer.

*Dedvukovic v. Martin*, 36 F. App'x 795, 798 (6th Cir. 2002) (citations omitted) (cited with

approval in *Griffin*, 330 F.3d at 737-38) (finding a reasonable probability where defendant swore

his attorney never explained significance of plea offer to him, attorney had no indication in file that

she properly advised defendant of the offer but stated it was her customary practice to do so, and

there was a large disparity between sentence offered and sentence imposed).

In the instant case, Petitioner contends that counsel was ineffective because Petitioner

rejected the first plea offer "on advice of counsel" and "received 10-50 times the prison time

offered in the 1st Plea Agreement offer" and he was "required to pay $1,623,819.00 above the 1st

plea agreement." (Doc. 91 at ID 1009.) Petitioner does not argue that counsel failed to

communicate, explain or otherwise discuss the terms of the plea agreement and Petitioner does not

argue that he was given inaccurate advice as to any of the terms of the first or second plea offers.

Facing a similar argument, one court noted that

8

[u]nlike *Frye* or *Lafler*, the Petitioner does not contend that trial counsel failed to convey a plea offer to him, or that he erroneously advised him to go to trial. Instead, petitioner argues that trial counsel's forecast about the potential sentence he would receive by rejecting the plea offer [ ]turned out to be wrong. That counsel's forecast turned out to be wrong, however, does not mean that his advice was incompetent based on the facts as counsel knew them at the time.

*French v. United States*, No. 3:13-00670, 2013 WL 5965898, at *4 (M.D. Tenn. Nov. 8, 2013).

Instead, Petitioner simply argues that the first plea offer was better than the second and he rejected the first "on advice of counsel." Courts are reminded to consider the setting during plea negotiations in applying the *Strickland* standard:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. . . . These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.

*Premo v. Moore*, 562 U.S. 115, 124 (2011). Petitioner's argument appears to be from a hindsight perspective and is therefore, I suggest, distorted. As noted by the government and as confirmed by the Court's docket, the first offer was made before the co-defendants were separated for trial and before Petitioner's co-defendant agreed to testify against Petitioner. (Doc. 97 at 1047-50.) Before this occurred, it would not have been unreasonable for counsel to have advised Petitioner that a defense could have been protracted at trial. The existence of a potential defense is consistent with the generosity of the first offer. The landscape changed abruptly when Petitioner's co-defendant

9

agreed to testify against him and defeat his defense. Therefore, it was not surprising that the second offer was less generous, as the tide had turned in the government's favor. Nonetheless, the second offer, which Petitioner agreed to accept, did provide some benefit to Petitioner, allowing him to admit to a limited amount of fraud that further allowed him to make a favorable sentencing guideline argument. (Doc. 97 at ID 1050.) I suggest that under these circumstances, counsel's performance could not be viewed as deficient.

Although Petitioner does not specifically state that counsel advised him to reject the first plea offer, even if counsel had, I suggest that there was a reasonable and sound strategic explanation for such advice. The ultimate decision was, of course, with Petitioner alone. As the Sixth Circuit has observed,

> [t]he decision to plead guilty [or not]–first, last, and always–rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).

I therefore suggest that Petitioner has not made any allegations which could be viewed as demonstrating ineffective assistance of counsel. *Kelsor v. United States*, No. 2:12-CV-01212, 2014 WL 2700937, at *11 (S.D. Ohio June 12, 2014) (holding that counsel was not ineffective where after rejection of the first plea offer, a conspiracy count was broadened and other charges were added; counsel attempted to reinvigorate the first plea, but was unsuccessful and instead negotiated a second plea agreement, which was later withdrawn and defendant was convicted at trial; the court noted that no attorney could have secured a plea agreement that limited the sentence to

twenty years where defendant's sentence upon conviction would be enhanced to life imprisonment).

To the extent that Petitioner argues that his counsel's ethical violations, as found by the attorney disciplinary board, constitute a *per se* violation of his right to effective assistance of counsel, courts have been unreceptive to this argument.[1] The Sixth Amendment's purpose "is not to police attorneys' ethical standards and create a constitutional code of professional conduct, its purpose is to assure a fair trial based on competent representation." *Beets v. Scott*, 65 F.3d 1258, 1272 (5th Cir. 1995). Since "a lawyer can be disciplined for a variety of reasons–merely because he is subject to disciplinary proceedings while representing a client does not mean that he is presumptively incapable of providing effective assistance." *Young v. Runnels*, 435 F.3d 1038, 1043 (9th Cir. 2006); *accord, United States v. Nickerson*, 556 F.3d 1014, 1019 (9th Cir. 2009) (collecting cases and holding that a violation of professional conduct does not amount to *per se* ineffective assistance).

I also note that Petitioner does not argue that his counsel was absent due to being under any disciplinary suspension; thus, Petitioner does not allege any error under *United States v. Cronic*, 466 U.S. 648 (1984).

For all the reasons stated above, I recommend that Petitioner's motion to vacate be denied.

**C.     Evidentiary Hearing**

Section 2255 states that

---

[1] Petitioner did not appear to be unhappy with his counsel when, despite knowing of his counsel's disciplinary issues, he nonetheless stated, "I would like him to still represent me. He has been with me the last couple years and he knows my case. . . . I'm sure everyone is frustrated with how long this has taken but I would still like him to represent me if that is possible." (Doc. 82 at ID 888.)

> [u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted). Additionally,

> The words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists.

*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

In the instant case, there is no material factual dispute that a hearing could address. I therefore suggest that Petitioner is not entitled to a hearing on the allegations raised in his motion.

### E.    Conclusion

For all the reasons stated above, I recommend that the Court deny Petitioner's motion.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 27, 2015                              S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge

13

**CERTIFICATION**

I hereby certify that this Order was electronically filed this date and served upon all counsel of record through the Court's CM/ECF system.  A hard copy was also sent via First Class mail to Richard Alan Behnan #41783039 at Rochester Federal Medical Center, PO Box 4000, Rochester, MN 55903.

Date:  July 27, 2015                                     By  s/Kristen Krawczyk
                                                        Case Manager Specialist